GIANT TIRE & RUBBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9412. Promulgated September 6, 1927.

1. Petitioner acquired certain properties for cash and capital stock subsequent to March 3, 1917. The determination of the respondent that section 331 of the Revenue Act of 1918 is applicable in the computation of invested capital is not disturbed due to lack of evidence.

2. Cost of properties destroyed by fire determined for the purpose of computing the loss resulting therefrom.

*Victor Heintz, Esq.,* for the petitioner.
*A. R. Marrs, Esq.,* and *Alva C. Baird, Esq.,* for the respondent.

Proceeding for the redetermination of a deficiency of $22,530.36 in income and profits taxes for 1918. The issues are: (1) Actual

cash value at date of acquisition of certain real and personal properties, acquired for cash and capital stock in May, 1917, and the value allowable for invested capital purposes; (2) cost of the properties acquired in May, 1917, for the purpose of determining the loss resulting from their destruction by fire; and (3) respondent's rejection of the comparatives suggested by the petitioner as the basis for determining the excess and war-profits taxes under section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

Petitioner, an Ohio corporation with its principal office at Findlay, is engaged in rebuilding automobile tires and tire accessories. Prior to May, 1917, the business was carried on at Akron, Ohio, in rented quarters.

At Findlay, Ohio, the Toledo Findlay Tire Co., for about one year had been conducting a business of building new automobile tires. The business was not successful and had passed into the hands of a receiver, who, in or about January, 1917, offered the plant, machinery, and equipment for sale.

Prior to May, 1917, petitioner's officers and directors, on several occasions, had considered the possibility of enlarging their plant facilities either by new construction or the purchase of a plant. The business had outgrown the quarters which it was occupying at Akron. Petitioner's secretary and treasurer made three or four trips to Findlay to ascertain the condition of the plant and equipment of the Toledo Findlay Tire Co. and its adaptability to the manufacturing operations of petitioner's business. The first of these inspection trips was made in March, 1917; and following the reports of the secretary and treasurer, petitioner's officers and directors determined upon the purchase of this plant with its machinery and equipment.

Claude E. Hart, petitioner's president, purchased the plant, machinery, and equipment of the Toledo Findlay Tire Co. at a receiver's sale, some time between January, 1917, and May 15, 1917, paying therefor the sum of $26,500 cash. The funds for the purchase were advanced by the petitioner and charged on its books to the account of its president. On or about May 15, 1917, Hart conveyed the aforementioned properties to the petitioner for a consideration of $26,500 cash and $50,000 par value of petitioner's common stock. Hart, without any obligation to do so, distributed the said $50,000 par value of common stock to the other stockholders, pro rata according to their holdings of common stock.

Just prior to the purchase of the plant of the Toledo Findlay Tire Co., petitioner had outstanding $25,000 par value of common stock and a very small amount of preferred stock. Hart, petitioner's president, owned between 30 and 33⅓ per cent of the common stock. To assist in financing the purchase of the Toledo Findlay Co. properties, petitioner's common stock was increased to $100,000 par value, and of the total increase of $75,000 par value, $50,000 was issued to Hart as part consideration for the properties under consideration, and by him distributed to the other stockholders as heretofore indicated. Either before, at the time of, or after the purchase of the Toledo Findlay Tire Co. properties, petitioner issued and sold $50,000 par value of preferred stock, giving to the purchasers thereof a bonus of one share of common stock for each four shares of preferred purchased. The total par value of the common stock issued as a bonus was $12,500. The balance of the increase in the common stock, $12,500 par value, was unissued.

At the time the properties under consideration were acquired by the petitioner, they were in good workable condition and ready to operate. The building was of sound construction; and aside from some bracing of the walls to sustain the heavy weight machinery on upper floors, which was done as a precautionary measure, no remodeling or repairs were necessary. The machinery and equipment was modern and in excellent condition, and most of it was practically new. The actual cash value of these properties, at the date paid in to petitioner, was not less than $76,500, of which $2,000 represented the actual cash value of the land.

In May, 1918, petitioner's plant, which comprised the properties under consideration and the additions thereto, was entirely destroyed by fire. All that remained of the buildings were the excavations and foundations, and some brick which petitioner was able to clean and use in reconstruction. Only a very small part of the machinery and equipment was salvaged. The total value of the salvaged building construction and machinery and equipment was $12,150. The cost to petitioner of such of the destroyed properties as formerly comprised the plant of the Toledo Findlay Tire Co. and were purchased by petitioner in May, 1917, was $76,500, of which $2,000 represents the cost of the land.

Petitioner submitted to respondent a list containing the names of five concerns, which, in its judgment, were representative corporations and similarly circumstanced with respect to volume of business, gross and net income, and capital employed, as to be proper comparatives in determining its profits-tax liability under section 328 of the Revenue Act of 1918. The list included:

Akron Tire Company, Long Island City, N. Y.
Super-Tread Tire Company, South Bend, Ind.
Black Hawk Tire Company, Warsaw, Ind.
Cross Country Tire Company, Buffalo, N. Y.
Overland Tire Company, Newark, N. J.

The principal business of the above five companies was rebuilding of automobile tires. The Akron Tire Co. had a much larger volume of business than the petitioner; the difference in the number of tires produced by the petitioner and each of the other four companies was not greater than 25 per cent of petitioner's production.

The properties which were paid in to petitioner by its president, on or about May 15, 1917, in exchange for $26,500 cash and $50,000 par value of common stock, were included in invested capital by respondent at a value of $26,500. Respondent also fixed the cost of these properties at $26,500, and using that cost as a basis, together with the cost of plant additions and stock in trade which were destroyed by fire, determined that the proceeds of the fire insurance policies exceeded the cost of the destroyed properties, resulting in a gain in excess of $6,000. Petitioner's profits-tax liability was determined by respondent under the provisions of section 328 of the Revenue Act of 1918.

#### OPINION.

MILLIKEN: Petitioner contends that the properties, formerly comprising the plant of the Toledo Findlay Tire Co., which it acquired from its president, Claude E. Hart, on May 15, 1917, for a consideration of $26,500 cash and $50,000 par value of common stock, had an actual cash value, at the date of acquisition, of $76,500, and that it is entitled to include these properties in its invested capital at that figure. Respondent answers that these properties may not be included in invested capital at a greater value than $26,500, which is the price at which they were acquired by petitioner's president at the receiver's sale, for the following reasons: (1) That in the transaction involving the purchase of the properties in question at the receiver's sale, for $26,500 cash, petitioner's president was acting for and in behalf of petitioner, as its agent, and that the price paid for these properties by petitioner's president, as agent, constitutes the cost thereof to the petitioner; (2) that the price paid for these properties by petitioner's president shortly before he paid them in to the petitioner fixes the actual cash value thereof, at the date paid in to petitioner, at $26,500; and (3) that if the Board finds that Claude E. Hart was acting for himself, at the receiver's sale, and not as petitioner's president and agent, then the provisions of section 331 of the Revenue Act of 1918 are applicable, and petitioner may not

include the properties in question in invested capital at a greater value than the cost thereof to Hart.

The evidence relating to the actual cash value of the properties in question at the date they were acquired by the petitioner conclusively establishes that value to have been not less than $76,500. Three witnesses qualified by past experience to give opinion evidence as to the value of these properties were called in petitioner's behalf. Two of them were entirely disinterested parties. They related in detail the methods followed by them in arriving at their conclusions of value. Their testimony is convincing and stands uncontroverted, and it is supported by appraisals made immediately after the fire in May, 1918, which were made the basis for the adjustment of the fire loss and which include only sound insurable values, exclusive of excavations and foundations for buildings and other noninsurable items, in excess of the value claimed by the petitioner.

Respondent contends that the price paid for these properties at the receiver's sale by petitioner's president conclusively establishes their actual cash value. We do not so regard it. It is merely a fact upon which we must rely until we are convinced by evidence of other facts that the sale is not significant of value. The preponderance of evidence is that the actual cash value of the properties in question was greater than the price paid therefor at the receiver's sale, and this is the value which is includable in invested capital under the plain provisions of section 326 of the Revenue Act of 1918. See *Appeal of Markenheim Co.*, 1 B. T. A. 1240.

Respondent's contention that Hart, in purchasing the properties in question at the receiver's sale, was acting in his official capacity of petitioner's president and agent, is based upon the facts that the funds for the purchase by Hart were advanced by petitioner, and that Hart distributed the common stock alleged to have been issued to him as a part of the consideration for the properties to the other common stockholders, in proportion to their holdings. But the evidence is that Hart was acting for himself and none other; that the funds advanced to him by petitioner were charged on the books against his account; and that he sold the properties in question to the petitioner for $26,500 cash and $50,000 par value of capital stock. The distribution of the common stock, which he received as part consideration for the properties, among the other common stockholders, Hart explains as a reward for their past services in building up the company, and an assurance of their continued efforts in behalf of the company of which he was president. The proven facts do not support respondent's contention.

Just prior to the purchase of the properties under consideration, petitioner had outstanding common stock of a par value of $25,000, and a very small amount of preferred stock. To assist in financing the purchase of the properties in question, the common stock was increased from $25,000 to $100,000 par value; and of the total increase of $75,000 par value, $50,000 was issued to Claude E. Hart as part consideration for the properties he transferred to petitioner, $12,500 was issued as a bonus to the purchasers of the preferred stock and $12,500 was unissued. Either before, at the time of, or after the purchase of the properties in question, $50,000 par value of preferred stock was sold for cash. In his answer to the petition respondent submitted as a proposition of law that section 331 of the Revenue Act of 1918 was applicable to the facts of this case, and limited the value at which the properties in question could be taken into petitioner's invested capital to the cost of the properties to Hart, the previous owner. Petitioner, therefore, was made aware that respondent's action in including the properties in question in invested capital at a value of only $26,500 was premised in part upon the provisions of section 331, and that it must sustain the burden of proof that this premise for respondent's action is, under all the circumstances, erroneous. Section 331 of the Revenue Act of 1918, provides:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided,* That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

Hart categorically denied on the witness stand that he owned as much as 50 per cent of petitioner's capital stock, at any time after he transferred the properties in question to petitioner. If that be true, and the record shows nothing to the contrary, he apparently did not retain an interest of 50 per cent or more in the properties which he transferred to the petitioner. But the proof does not go far enough, since the limitations of section 331 are applicable if Hart

retained a control of 50 per cent or more in the properties after transfer to the petitioner, and the record fails to disclose whether Hart did or did not retain such a control. Just prior to the transfer of these properties to the petitioner, Hart owned from 30 to 33⅓ per cent of petitioner's $25,000 par value of common stock. The common stock was increased to $100,000 par value, Hart receiving $50,000 par value as part consideration for the properties. There were no strings attached to the issuance of this $50,000 of common stock to Hart, and when he distributed it among the other common stockholders he did so of his own volition. Hart, then, did immediately after the transfer of the properties in question to petitioner, own more than 50 per cent of petitioner's common stock. When was the preferred stock issued? Who were the purchasers of the preferred stock? Did the holders of the preferred stock have any voice in the management or control of petitioner's business? These questions remain unanswered. Were we to hold that section 331 was not applicable, we would have to assume, at least, that the rights of the preferred stockholders were on a parity with those of the common stockholders, and this we are unwilling to do. Petitioner has failed to prove that the provisions of section 331 are not applicable in including the properties in question in invested capital. Under the circumstances there is no ground for disturbing respondent's action in including the properties in invested capital at their cost to Hart, the previous owner, to wit, $26,500.

For reasons hereinbefore stated, we find the cost of the properties in question to have been $76,500, and that figure is the basis for the determination of the loss resulting from the destruction of those properties by fire in 1918. The basis of $26,500 used by the respondent, as the result of which he determined a profit in excess of $6,000, is erroneous.

Petitioner alleges error in respondent's rejection of the comparatives which it suggested for the purpose of determining the profits taxes under section 328 of the Revenue Act of 1918. Petitioner did not prove the allegation; nor did it show what comparatives were used by respondent, or that the comparatives used were not such as contemplated by the statute; nor has it succeeded in proving that the comparatives which it suggested are proper.

*Judgment will be entered on 15 days' notice,*
*under Rule 50.*

. Considered by MARQUETTE AND VAN FOSSAN.